# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| EUSTACE O. UKU, | : | Bankruptcy No. 21-21712-CMB |
| Debtor. | : | |
| | : | Chapter 13 |
| CHARLES A. KNOLL, JR., | : | |
| Plaintiff, | : | |
| v. | : | Adversary No. 21-2104-CMB |
| EUSTACE O. UKU, | : | Related to Doc. No. 33 |
| Defendant. | : | |

*Appearances*: David M. Nernberg, Esq., for Plaintiff
Andrew K. Pratt, Esq., for Defendant/Debtor

## MEMORANDUM OPINION

The matter before the Court is the *Amended Rule 7056 Motion for Summary Judgment* ("Motion," Doc. No. 33) filed by Plaintiff Charles A. Knoll, Jr., seeking a determination that the debt owed to him is non-dischargeable.[1] The debt is the result of a judgment entered in his favor and against the Debtor, Eustace O. Uku, by the Court of Common Pleas of Allegheny County ("State Court"). Debtor opposes the Motion. Resolution of this matter is dependent upon the applicability of collateral estoppel to certain findings made by the State Court and whether those findings alone are sufficient to meet the requisite elements of the relied-upon provisions of 11 U.S.C. §523. For the reasons set forth herein, the Court finds that summary judgment is not appropriate, and the Motion must be denied.

---

[1] Pursuant to 28 U.S.C. §§157 and 1334, this Court has subject matter jurisdiction. Further, this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

1

Background and Procedural History

On July 29, 2021, Debtor commenced his bankruptcy case by filing a petition for relief under Chapter 13 of the Bankruptcy Code. Mr. Knoll filed a proof of claim on August 12, 2021, identifying a secured claim in the amount of $380,699.65, which has been reduced due to payments made throughout this case. On October 22, 2021, Mr. Knoll filed his *Adversarial Claim for Fraud Against Debtor, Eustace O. Uku, Pursuant to 11 USCS 523(a) and 727* ("Complaint," Doc. No. 4) asserting that the debt owed to him is non-dischargeable, specifically citing to 11 U.S.C. §523(a)(4) and (6),[2] and relying upon findings made by the State Court in support of the Complaint. Debtor filed an Answer (Doc. No. 11) denying that Debtor's conduct meets the requirements of either provision of §523.

In the pending Motion, Mr. Knoll relies upon the State Court findings and the application of collateral estoppel in support of his argument that the debt is not dischargeable pursuant to §523(a)*(2)* and (4), despite the fact that §523(a)(2) was not referenced within the Complaint. For a period of time, the Motion was held in abeyance while the parties attempted to resolve their disputes. Ultimately, negotiations failed, and mediation proved unsuccessful. Thereafter, a scheduling order was entered on the Motion.

In support of his Motion, Mr. Knoll filed an appendix of documents.[3] Debtor did not produce such an appendix; instead, Debtor takes the position that Mr. Knoll cannot meet his burden by relying on the State Court findings and collateral estoppel. Having considered the parties' briefs

---

[2] In this Chapter 13 case, it appears the reference to §727 in the title of the Complaint was an error as the section is only applicable to cases filed under Chapter 7. *See* 11 U.S.C. §103(b). Further, to the extent Mr. Knoll sought relief under §523(a)(6), that provision is not applicable in this Chapter 13 case (at least at this time). *See* 11 U.S.C. §1328(a)(2) and Fed.R.Bankr.P. 4007(d). Mr. Knoll acknowledges this as well. *See* Doc. No. 83 at 9 n.6. Therefore, that provision will not be addressed further.

[3] These documents are labeled and will be referred to herein as Exhibits A-L. *See* Doc. Nos. 26 and 88.

and submissions as well as the arguments presented on April 11, 2024, the matter is now ripe for decision.

## Standard

Exceptions to discharge under §523 are generally construed in favor of the debtor. *See Lepre v. Milton* (*In re Milton*), 595 B.R. 699, 712 (Bankr.W.D.Pa. 2019). In this adversary proceeding, the burden is on Mr. Knoll to prove the debt is non-dischargeable by a preponderance of the evidence. *See id.* Mr. Knoll contends he can meet this burden at this juncture based on the State Court's findings.

Mr. Knoll's Motion is governed by Fed.R.Civ.P. 56, made applicable by Fed.R.Bankr.P. 7056. Such a motion will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). A fact that may impact the outcome under applicable substantive law is deemed material, and a dispute over such a fact is genuine if a verdict could be returned in favor of the nonmoving party by a reasonable jury. *See Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Initially, it is the movant's burden to identify the portions of the record establishing the absence of a genuine dispute as to any material fact. *See Santini*, 795 F.3d at 416 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If movant satisfies that burden, the non-moving party must come forward with specific facts to demonstrate the existence of a genuine dispute for trial. *See Santini*, 795 F.3d at 416 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All evidence is construed in the light most favorable to the non-moving party. *See Santini*, 795 F.3d at 416 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

State Court Findings

In the State Court action, Mr. Knoll pursued multiple claims against the Debtor and other defendants, Yale Development & Contracting, Inc. ("Yale") and Exico, Inc ("Exico"). After a non-jury trial, Mr. Knoll's proposed findings of fact were adopted, with the exception of paragraphs 16 and 98, and Mr. Knoll was successful with respect to his claims against all defendants for breach of contract, breach of fiduciary duty, and conversion. A summary of the facts adopted by the State Court are set forth below.[4]

Debtor is the president and sole shareholder of Exico. Yale was a construction company created by Mr. Knoll and Debtor. Mr. Knoll was a 49% shareholder and vice president, and Debtor was a 51% shareholder and president. Mr. Knoll and Debtor had a contract to split the profits of Yale, with 51% to the Debtor and 49% to Mr. Knoll. The only way either party was to receive funds from Yale was through a distribution of profits. Nonetheless, Debtor and Exico received funds from Yale totaling in excess of $280,000.00 from 2008-2012 while Mr. Knoll received no distribution during that timeframe. Based on this conduct, Mr. Knoll alleged that Debtor and Exico withdrew funds from Yale and dissipated those funds for their own use, without lawful justification, and to his detriment. Though Debtor asserted he could manage the company in his best business judgment without accounting to Mr. Knoll for everything he did, Mr. Knoll established that Debtor and Exico were using Yale as their own personal piggy bank, and no legitimate business purpose existed for the payments. Debtor was unable to establish either of his alleged justifications for the withdrawals (that is, that (1) funds were deposited into Yale's account for which he and Exico were entitled to credit or (2) that he and Exico had any entitlement to "overhead" for support and services he claimed were provided to Yale). The State Court

---

[4] The State Court Opinion is Mr. Knoll's Exhibit F, and the proposed findings of fact that were adopted by the State Court are within Mr. Knoll's Exhibit H.

determined that, had the funds not gone to Debtor or Exico, they would have been profits of Yale. Accordingly, judgment was entered in favor of Mr. Knoll.

Analysis

Section 523(a)(2)

As a preliminary matter, this Court will address and dispose of Mr. Knoll's Motion to the extent he seeks relief under §523(a)(2).[5] Debtor argues that Mr. Knoll failed to plead a claim for such relief in his Complaint and therefore objects to consideration of the arguments made pursuant to that exception to discharge. In response, Mr. Knoll contends that §523(a)(2) should nonetheless be considered because the Complaint alleges fraud and cites to §523(a) generally. First, the general reference to §523(a) appears in the title of the Complaint only. Second, the Court cannot agree with Mr. Knoll's position that simply identifying §523(a) establishes that the Complaint encompasses any and all potentially relevant exceptions to discharge set forth in that section. This is especially true where two provisions of §523(a) are explicitly relied upon within the Complaint: 11 U.S.C. §523(a)(4) and (6). *See* Complaint at ¶9. There has been no attempt to amend, nor any other sufficient basis offered upon which this Court should consider §523(a)(2) at this time.

Section 523(a)(4)

The issue remaining then is whether Mr. Knoll is entitled to summary judgment on his §523(a)(4) claim, which excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The Motion relies upon the application of collateral estoppel. That is, Mr. Knoll contends that all of the facts necessary to meet his burden have already been determined by the State Court and are binding in this proceeding. Significantly, "[e]ven upon

---

[5] As relied upon here, this provision of the Bankruptcy Code excepts from discharge debts resulting from false pretenses, false representations, or actual fraud. Notably, a general reference to fraud does not necessarily include a request for relief under §523(a)(2), especially where there is an explicit reference to §523(a)(4), which provides a different exception to discharge also based on fraudulent conduct.

5

a determination of the applicability of collateral estoppel, it must be determined whether the state court judgment and the underlying findings are sufficient to warrant summary judgment regarding the dischargeability of debt." *Aiello v. Aiello* (*In re Aiello*), 533 B.R. 489, 494-95 (Bankr.W.D.Pa. 2015). Although collateral estoppel may prevent the relitigation of issues previously decided, the question of dischargeability is a legal determination reserved for the bankruptcy court. *Id.* at 494.

The preclusive effect of the judgment will be determined by the law of the adjudicating state, in this case, Pennsylvania. *See id*. The application of collateral estoppel depends upon whether the following elements are met:

(1) an issue is identical to one that was presented in a prior case;
(2) there has been a final judgment on the merits of the issues in the prior case;
(3) the party against whom the doctrine is asserted was a party in, or in privity with a party in, the prior action;
(4) the party against whom the doctrine is asserted, or one in privity with the party, had a full and fair opportunity to litigate the issue in the prior proceeding; and
(5) the determination in the prior proceeding was essential to the judgment.

*See Viener v. Jacobs* (*In re Jacobs*), 381 B.R. 128, 142 & n.23 (Bankr.E.D.Pa. 2008) (noting that the fifth element is not always included by Pennsylvania and federal decisions applying the doctrine under Pennsylvania law). *See also Aiello*, 533 B.R. at 494 n.2 (noting that, whether stated as four or five elements, the doctrine is essentially the same). In this case, there has been a final judgment on the merits, the parties are the same, and there was a full and fair opportunity to litigate before the State Court. The dispute, however, is the identity of the issues.

Section 523(a)(4) provides several distinct grounds for relief. *See Larson v. Bayer* (*In re Bayer*), 521 B.R. 491, 500 (Bankr.E.D.Pa. 2014). A threshold element to a successful action alleging fraud or defalcation under §523(a)(4) is establishing that the debtor was acting as a fiduciary within the meaning of the Bankruptcy Code. *See id.* Courts have recognized the difficulty in ascertaining whether this threshold requirement is met, especially as the term is to be construed

6

narrowly under §523(a)(4). *See T. Levy Assocs., Inc. v. Kaplan* (*In re Kaplan*), 608 B.R. 443, 454-55 (Bankr.E.D.Pa. 2019) (citing *Bayer*, 521 B.R. at 505-06). For non-dischargeability purposes, a fiduciary relationship is properly found where an express or technical trust is present. *See Bayer*, 521 B.R. at 506. "[I]t is well-established that fiduciary status outside of the bankruptcy context does not *ipso facto* result in fiduciary status for purposes of *Section 523(a)(4)*." *See I.U.P.A.T. Dist. Council No. 57 Combined Funds v. Hawranko* (*In re Hawranko*), 627 B.R. 305, 314 (Bankr.W.D.Pa. 2021). In other words, the mere fact that the State Court found a breach of fiduciary duty is insufficient to meet Mr. Knoll's threshold burden to establish that Debtor was acting in a fiduciary capacity under §523(a)(4).

Mr. Knoll's initial brief entirely fails to account for the specialized meaning of "fiduciary" in the context of §523(a)(4). He relies solely on the following to satisfy this threshold requirement: "[Debtor] was acting as a fiduciary for Knoll, as held by the trial court." *See* Doc. No. 34 at 5. As set forth above, this conclusory statement without more is insufficient. Mr. Knoll aims to correct this in his reply brief by first citing to *Larson v. Bayer* for the proposition that the existence of an express or technical trust is determined by applicable state law. *See* Doc. No. 83 at 9 (citing *Bayer*, 521 B.R. 491). He then proceeds to cite a "very broad and comprehensive" description of trust relationships set forth in an opinion of the Pennsylvania Supreme Court. *See* Doc. No. 83 at 9-10 (citing *In re Vosburgh's Estate*, 123 A. 813 (Pa. 1924)). To the extent the description is to be applied under §523(a)(4) as Mr. Knoll contends, encompassing "principal and agent" and "borrower and lender" relationships, this is at odds with the description set forth in *Bayer*. *See* 521 B.R. at 506 (distinguishing fiduciaries under §523(a)(4) from "mere agents or representatives" and finding §523(a)(4) inapplicable to ordinary commercial or contractual relationships). Nonetheless, Mr. Knoll argues that Debtor acted as his agent pursuant to their contractual agreement, and their

7

relationship as shareholders resulted in a duty of trust to Mr. Knoll. *See* Doc. No. 83 at 10. To the extent he relies on the shareholder relationship between the parties or Debtor's position as an officer of Yale, Mr. Knoll does not offer any citation to Pennsylvania law regarding how such a status alone satisfies the elements of a trust to meet the fiduciary capacity requirement of §523(a)(4).[6] Without establishing this threshold requirement, the Court need not consider the elements of fraud or defalcation under the statute.

The Court next considers embezzlement and larceny, which do not require the existence of a fiduciary relationship. *See Kaplan*, 608 B.R. at 456. Beginning with embezzlement, a plaintiff must show: "(1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent." *See id.*[7] Larceny is described as the "felonious taking of another's personal property with intent to convert it or deprive the owner of same" and requires a showing of felonious intent. *See Compton v. Moschell* (*In re Moschell*), No. 19-02104-JAD, 2020 WL 5998166, at *5, 2020 Bankr. LEXIS 2829, at *12 (Bankr.W.D.Pa. Oct. 9, 2020). While Mr. Knoll contends that he has claims for embezzlement and larceny, both require a showing of intent that is lacking in the State Court findings. This was the focus of the parties' arguments.[8] There appears to be no dispute that the underlying claims established in State Court

---

[6]    *See also T. Levy Assocs. Inc. v. Kaplan* (*In re Kaplan*), 634 B.R. 673, 693 (Bankr.E.D.Pa. 2021) (recognizing the narrowness of the concept of fiduciary capacity under §523(a)(4) and finding that "the general duties of good faith, loyalty, and fair dealing imposed on corporate officers under Pennsylvania law are insufficient alone to show officers acted in a fiduciary capacity over a technical trust").

[7]    No specific finding of "entrustment" was identified by Mr. Knoll, and little effort was made to connect the findings to the requisite §523(a)(4) elements. It has been observed that a finding of conversion may actually preclude a finding of embezzlement. *See Kaplan*, 608 B.R. at 456-57. This Court does not decide the issue at this time but simply observes that the briefing oversimplified the issues without addressing the intricacies of the independent grounds for non-dischargeability under §523(a)(4).

[8]    Although not addressed by the parties, another issue is present in assessing the requisite elements. As set forth in ¶¶10-11 in the adopted findings of fact, throughout 2008-2012, Debtor and Exico withdrew or received funds from *Yale's* accounts. *See* Exhibit H. "Had those funds not been withdrawn or received by Exico or [Debtor], those funds would have constituted profit of Yale." *Id.* at ¶34. Thus, the question becomes whether Mr. Knoll can succeed on his claims for embezzlement and/or larceny if the subject

(breach of contract, breach of fiduciary duty, and conversion) do not require a finding of fraudulent or felonious intent. However, Mr. Knoll contends that the State Court findings of fact support a finding of fraud or at least provide sufficient circumstantial evidence of fraud.[9]

Although extensive findings of fact were adopted by the State Court in rendering its decision, viewing the record in the light most favorable to the non-moving party as required in the consideration of this Motion, the Court cannot find that the requisite intent is established by a preponderance of the evidence. While it has been established that Debtor took the funds without a legitimate business purpose, his intent was not discussed or necessarily considered.[10] The Court's decision is impacted by the well-recognized fact that intent is especially difficult to establish for purposes of summary judgment.[11] In addition, the Court considers the manner in which Mr. Knoll's Motion was originally presented in the context of his initial, conclusory brief, that lacked any specific reference to how he could establish the requisite intent aside from inaccurate

---

property was that of the corporation. *See Ginsburg ex rel. Vertical Grp., Inc. v. Birenbaum*, No. 06-01217, 2009 WL 304045, at *10, 2009 U.S. Dist. LEXIS 9347, at *41-44 (W.D.Pa. Feb. 9, 2009).

[9] In statements within his initial brief, Mr. Knoll inaccurately represents that the State Court found fraud. *See* Doc. No. 34. Subsequently, Mr. Knoll took the position that the State Court findings *denote* fraud. *See* Doc. No. 84 at 5. Notably, Mr. Knoll cites to adopted finding of fact at ¶15 in support of this statement, which appears to be a finding of only what was set forth in the underlying complaint and not a determination of the allegations therein. *See* Exhibit H. The next paragraph, which proposed to treat the allegations as admitted, was explicitly not adopted by the State Court. *See* Exhibit F at 2 (excluding paragraphs 16 and 98). As clarified at oral argument, fraud was not actually found by the State Court; rather, Mr. Knoll's position is that the findings of fact taken together support a finding of fraud. *See* Audio of Oral Argument at 10:22-10:24 A.M.

[10] To the extent Debtor's intent may have been considered by the State Court in connection with the request for punitive damages, the State Court denied the request. *See* Exhibit F at 2. *See also* Exhibit H at 36 (setting forth Mr. Knoll's argument in favor of a finding of evil motive or reckless indifference to support an award of punitive damages).

[11] *See Aiello*, 533 B.R. at 505 (recognizing this but finding a sufficient record to support the state of mind required for a finding of defalcation). In *Aiello*, a similar argument was raised by the debtor that collateral estoppel could not apply since the orphan's court decision did not require a determination of debtor's state of mind and thus prevented summary judgment. *Id.* at 493. In that case, the Court nonetheless found the findings and conclusions of the orphan's court to be "sufficiently detailed, numerous and weighty" to meet the state of mind requirement for defalcation. *Id.* at 501. In so concluding, the Court also considered that the creditor (beneficiary of the decedent's estate) was not sophisticated in business, did not speak English as her native language, and placed an inordinate amount of trust in the debtor, her brother-in-law. *Id.* at 502.

representations that the State Court actually found fraud.[12] Nonetheless, to the extent Debtor alleged justifiable reasons to support an entitlement to the funds withdrawn, those were rejected by the State Court based on the evidence (or rather lack of evidence in support). In other words, Debtor cannot now argue that he was entitled to the funds. To be clear, that will not be reconsidered here. *See Novartis Pharms. Corp. v. Adesanya*, 645 B.R. 733 (E.D.Pa. 2022) (affirming bankruptcy court's decision which applied collateral estoppel to findings in prior action and limited trial to the narrow issues of debtor's knowledge, purpose, and intent for the determination of dischargeability of debt). As acknowledged by Debtor, this Court can have a trial on the specific issue of intent. *See* Audio of Oral Argument at 10:35-10:36 A.M. As Mr. Knoll did not meet his burden as to Debtor's intent when the funds were withdrawn throughout the 2008-2012 timeframe, a trial is required.[13]

---

[12] For example, the initial brief includes the following conclusory arguments in support of his §523 burden as well as misleading statements regarding fraud:
- "The [State Court] specifically found [Debtor] liable to Knoll for the underlying judgment for reasons of *fraud*, breach of fiduciary duty and conversion."
- "Conversion is the civil side for the criminal act of Larceny."
- "Intention needs no explanation."
- "[Debtor] was acting as a fiduciary for Knoll, as held by the trial court."
- "[T]he Court specifically found [Debtor] liable for *fraud*…."

*See* Doc. No. 34 at 2, 4-5 (emphasis added).

[13] Debtor's testimony in State Court reflects his belief that he could manage the company based on his own business judgment. *See* Exhibit H at ¶¶18-20. It would seem relevant to know on what basis he held this belief and how that impacted the withdrawals of funds at issue. The State Court found that the records Debtor maintained for Yale contained numerous errors. *See* Exhibit F at 4. Was this a result of fraud or carelessness? Was Mr. Knoll aware of any withdrawals during this four-year period? Did Debtor take steps to conceal these transfers during this timeframe or exclude Mr. Knoll from access to Yale's records? At oral argument, counsel for Mr. Knoll seemed to acknowledge some of these issues by suggesting that these were addressed by testimony in the State Court action; however, while of record in State Court, this additional support was not provided to this Court in support of the Motion. *See* Audio of Oral Argument at 10:16 A.M. To be clear, certain findings begin to push the needle toward fraudulent intent even in the absence of an express finding of fraud, including the destruction of related documents while the State Court case was pending. *See* Exhibit H at ¶¶124-125. However, it also appears relevant to know the surrounding circumstances and if this destruction was a purposeful concealment of facts or something less nefarious. Nonetheless, the Court will not speculate as to what the parties may present at trial, and Mr. Knoll may be able to establish sufficient indicators of fraudulent intent to meet his burden on the issue.

<u>Conclusion</u>

Based on the foregoing, Mr. Knoll failed to show that the State Court findings and application of collateral estoppel are sufficient to meet his burden to establish non-dischargeability of the debt. Accordingly, the Motion must be denied. An Order will be entered consistent with this Memorandum Opinion.

Date: <u>April 24, 2024</u>   <u>   /s/ Carlota M. Böhm         </u>
Carlota M. Böhm
United States Bankruptcy Judge

FILED
4/24/24 4:29 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA